UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH CROSSLEY and JESSICA CROSSLEY, individually and for and on behalf of their child D.C., a minor,<br><br>                Plaintiffs,<br><br>v.<br><br>WEST ADA SCHOOL DISTRICT #2, an Idaho County School District; TODD ADAMS, an individual; CYNTHIA MCCARTNEY, an individual, CAROLYN GLOVER, an individual; DOES I-X,<br><br>                Defendants. | Case No. 1:24-cv-00106-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants' Motion for F.R.C.P. 35 Examination of Plaintiff and Motion to Seal. Dkts. 21, 24. Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons below, the Motion for F.R.C.P. 35 Examination is GRANTED and the Motion to Seal is GRANTED.

## II. BACKGROUND

On February 23, 2024, Plaintiffs filed the instant lawsuit alleging their minor child D.C., who has a disability,[1] was physically dragged from his classroom on two different occasions when he had been disruptive due to his disability. Dkt. 1, at 6. The first instance,

---

[1] At the time of the incidents, D.C. was receiving special education and had an Individualized Education Plan.

on September 15, 2022, was captured on video, and seems to show Defendant Carolyn Glover, D.C.'s general education teacher, and Defendant Cynthia McCartney, Glover's aid, working together to remove D.C. from the classroom. D.C.'s mother, Plaintiff Jessica Crossley, was notified of the incident that afternoon and spoke to Defendant Todd Adams, the school's principal.

The second incident occurred on September 20, 2022, which was also captured on video and showed only one adult removing D.C. from the classroom, who Plaintiffs claim was McCartney.[2] Jessica once again went to the school, and she and Glover went to speak with Adams, which is where Jessica reviewed the video footage. After the second incident, D.C. did not return to the school, but the District did contact Plaintiffs on September 28, 2022, and stated D.C. should return. Plaintiffs allege D.C. was so traumatized from these two instances that he fears for his safety and is "terrified to return to any public school." Dkt. 1, at 9.

On October 13, 2022, Jessica attended an Individualized Education Plan ("IEP") meeting. Despite this meeting, D.C. never returned to school fulltime after the second incident. Plaintiffs are now suing Defendants for violations of the Fourteenth Amendment of the United States Constitution, the American with Disabilities Act, the Rehabilitation Act, Idaho Code § 6-1701 (relating to child abuse), and for intentional infliction of emotional distress. *Id.* at 9–15.

The Court issued a scheduling order on May 10, 2024, which set a fact discovery

---

[2] In their Answer, Defendants deny the Plaintiffs' description of what happened in the videos. Dkt. 10, at 6.

MEMORANDUM DECISION AND ORDER - 2

deadline of February 7, 2025, and an expert discovery deadline of February 14, 2025. Dkt. 14, at 3–4. On December 30, 2024, Defendants filed several Motions[3] all relating to Defendants' desire that D.C. attend a two-day mental examination with the first session to be held on January 7, 2025. *See* Dkts. 21, 22, 23, 24. In informal communications with counsel, the Court explained that even an expedited briefing schedule would not allow the Court to render a decision on the Motions prior to January 7, especially considering the Court's calendar and the holidays.

Based on these considerations, the parties were able to reach a stipulation which resolved the Motion for Extension of Time to Complete Discovery (Dkt. 22) and the Motion to Expedite Ruling (Dkt. 23). The parties also agreed to extend the expert discovery deadline to March 31, 2025. Dkts. 26, 27.

Two motions remain that are ripe for the Court's review: Defendants' Motion for F.R.C.P. 35 Examination (Dkt. 21) and Defendants' Motion to Seal (Dkt. 24). Plaintiffs do not oppose Defendants' Motion to Seal, but they did submit a response brief opposing the Motion for Examination. Dkt. 29.

### III. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 35

Federal Rule of Civil Procedure 35 authorizes the Court to compel a party to submit

---

[3] Each of Defendants' motions related to discovery. The undersigned's policy is not to entertain "any written discovery motions until the Court has been provided with an opportunity to informally mediate the parties' dispute." *See* https://id.uscourts.gov/district/judges/nye/Discovery_Disputes.cfm. That did not happen in this case. Neither party contacted the Court about the disagreement; Defendants simply filed a slew of motions. The Court has, on occasion, struck discovery motions that failed to meet this pre-filing requirement. That said, the Court did not do that in this case due to time-constraints. Nevertheless, the parties are reminded to follow the Court's procedures in the future.

MEMORANDUM DECISION AND ORDER - 3

to a mental or physical examination where the party seeking an evaluation establishes: (1) the party's physical or mental condition is "in controversy," and (2) good cause exists for the evaluation. *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). The movant must do more than provide conclusory allegations of the pleadings or show the examination is relevant to the case; rather, the movant must affirmatively show each condition as to which examination is sought is "really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* at 118.

"Good cause" generally requires a showing of specific facts justifying discovery. Factors that courts have considered include, but are not limited to, the possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *See, e.g., Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995) (discussing expert testimony); *Schlagenhauf*, 379 U.S. at 118 (discussing availability by other means). Even upon a showing of good cause, the Court still has discretion on whether to order an examination. And while the rule should be liberally construed to allow examination, the Court must balance the invasion of privacy of the examinee against the moving party's right to a fair trial. *Carbajal v. Hayes Management Serv., Inc.*, 343 F.R.D. 192, 196 (D. Idaho 2022).

### B. Motion to Seal

Court proceedings and records are generally open to the public. *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Assoc. Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("We thus find that the

public and press have a first amendment right of access to pretrial documents in general."). This right of access is "grounded in the First Amendment and in common law." *CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823, 825 (9th Cir. 1985) (citing *Assoc. Press*, 705 F.2d at 1145). Such a general rule for access applies in civil cases. *See, e.g., Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979).

Two standards govern motions to seal documents: a "compelling reasons" standard, which applies to documents attached to dispositive motions, and a "good cause" standard, which applies to documents attached to non-dispositive motions. *Simmons v. Battelle Energy All., LLC*, 2016 WL 3552182, at *3 (D. Idaho June 23, 2016) (citing *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006)); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2016). *But see Ctr. for Auto Safety v. Chrysler Group, LLC.*, 809 F.3d 1092, 1101 (9th Cir. 2016) (holding that motions that are technically non-dispositive may still require the party to meet the "compelling reasons" standard when the motion is more than tangentially related to the merits of the case).

Records attached to non-dispositive motions are not subject to the strong presumption of access that records attached to dispositive motions are. *Kamakana*, 447 F.3d at 1179; *see also Pintos*, 605 F.3d at 678–79. Because the documents attached to non-dispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," a party moving to seal need only meet the lower "good cause" standard of Federal Rule of Civil Procedure 26(c). *Kamakana*, 447 F.3d at 1179 (internal quotation marks and citation omitted). The relevant standard for purposes of Rule 26(c) is whether "'good cause' exists to protect th[e] information from being disclosed to the public by

MEMORANDUM DECISION AND ORDER - 5

balancing the needs for discovery against the need for confidentiality." *Pintos*, 605 F.3d at 678 (cleaned up).

## IV. DISCUSSION

### A. Motion for Rule 35 Examination (Dkt. 21)

*1. Physical and Mental Condition in Controversy*

Before being able to order an examination, the Court must determine whether D.C.'s physical or mental condition is in controversy. It seems that both parties agree this prong has been met. In Plaintiffs' response, they state, " . . . the fact that D.C.'s mental or physical condition is in controversy does not in and of itself justify the severely more invasive use of a Rule 35 exam." Dkt. 29, at 4. The Court agrees this first prong has been met.

Where a Plaintiff asserts a mental or physical injury, they are placing that mental or physical injury clearly in controversy.[4] *Schlagenhauf*, 379 U.S. at 243. Plaintiffs have set forth two causes of action that assert a mental or physical injury: civil child abuse under Idaho Code § 6-1701 and intentional infliction of emotional distress. Dkt. 1, at 17–19. First, Section 6-1701 provides a civil cause of action for a child who has been injured in accordance with Idaho Code § 18-1501. IDAHO CODE § 6-1701(1)(d). Section 18-1501 prohibits, in relevant part, willful causation or infliction of "unjustifiable physical pain or

---

[4] There is a distinction between the parties simply making a claim of emotional distress and making a claim of mental or psychiatric injury. *See Turner*, 161 F.R.D. at 93 (discussing *Peters v. Nelson*, 153 F.R.D. 635 (N.D. Iowa 1994)). While nuanced, an emotional distress claim is one in which there is a general allegation of emotional distress. Whereas in a claim of mental or psychiatric injury, the injury itself forms part of the basis of the wrongdoing. *See Sabree v. United Brotherhood of Carpenters & Joiners of America, Local No. 33*, 126 F.R.D. 422, 426 (D. Mass. 1989) ("[The plaintiff] has not placed his mental condition at issue. [He] makes a 'garden-variety' claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination.").

MEMORANDUM DECISION AND ORDER - 6

mental suffering." IDAHO CODE § 18-1501(1–2). Plaintiffs allege Defendants McCartney and Glover's forceful removal of D.C. from the classroom constituted abuse. However, the parties disagree as to what transpired, what effect that had on D.C., and whether any ongoing problems D.C. might possess were caused by the incidents at the center of this suit or were pre-existing. Thus, this claim put D.C.'s physical and mental condition squarely in controversy.

Second, and intuitively, Plaintiffs' claim for intentional infliction of emotional distress also places D.C.'s physical and mental condition in controversy. Again, Plaintiffs allege Defendants McCartney and Glover acted in such a way that "instilled fear and trauma" into D.C., caused his severe emotional distress, and even "significantly exacerbated" his pre-existing mental distress and anxiety. Dkt. 1, at 19. Defendants adamantly dispute these allegations, arguing Plaintiffs have provided no corroborating evidence for these claims, including any ongoing injury. Dkt. 21-1, at 5–6. Thus, D.C.'s mental and physical condition is in controversy both on this claim and on the civil child abuse claim, and the first prong of F.R.C.P. 35 is met.

2. *Good Cause*

The good cause requirement is "necessarily related" to the in-controversy requirement of Rule 35. *Schlagenhauf*, 379 U.S. at 118–19. For example, a plaintiff who asserts a mental or physical injury in a negligence action both places the mental or physical injury in controversy and provides good cause for an examination to determine the existence and extent of such an injury. *Id.* at 119. The instant case is analogous.

The only examination that has been performed on D.C., that the Court is aware of,

took place approximately one month after the incidents in controversy on October 17, 2022. Dkt. 25-1. Plaintiffs have relied on the report prepared after that examination in the Complaint. *See, e.g.*, Dkt. 1. While the parties have not yet disclosed which experts, if any, they intend to use to prove their claims, the Court assumes Plaintiffs intend to rely on that report from 2022 moving forward.

Even if not, Plaintiffs claim D.C. is suffering ongoing emotional and physical distress because of the Defendants action in September 2022. But Defendants rightfully point out that D.C. seemed to have various issues prior to the incidents, and causation could be a critical issue here. Additionally, without a more up-to-date examination, there are really no other means[5] to determine the existence and extent of any injury. This is highly relevant considering Plaintiffs are making a claim for intentional infliction of emotional distress, and Plaintiffs' child abuse claims center on whether Defendants willfully inflicted "unjustifiable" physical or mental pain on D.C. As such, a new examination of D.C. seems indispensable, and there is good cause for ordering such.

3. Scope

In ordering a Rule 35 examination, the Court "must specific the time, place, manner, conditions, and scope of the examination, as well as the person or person who will perform

---

[5] Plaintiffs point out that Defendants have conducted virtually no other discovery before submitting this Motion, such as third-party subpoenas to medical providers. The Court was unable to find any authority that suggested IMEs are only proper after all other avenues of discovery have been exhausted. In fact, Rule 26(d)(3) states that unless the parties stipulate or the Court orders otherwise, methods of discovery may be used in any sequence. While the Court has considered the lack of other discovery when deciding whether there is good cause for an examination here, the nature of the allegations necessitate a near-contemporaneous examination of D.C. to determine the effects of the September 2022 incidents on his physical and mental health now in 2025.

MEMORANDUM DECISION AND ORDER - 8

it." Fed. R. Civ. Pro. 35(a)(2)(B). The Court once again emphasizes the need to balance the invasion of privacy of the examinee against the moving party's right to a fair trial. In line with such a goal, the Court will order an examination of D.C. by Dr. Jason Gage.[6] The examination is to take place within sixty (60) days of this Order according to the terms that will be set forth below.[7]

Plaintiffs have expressed their concerns that the proposed scope of the examination to be performed by Dr. Gage is not meant to "discover the legitimacy or scope of D.C.'s mental or physical injuries," but rather to evaluate D.C.'s disability when the fact he has a disability is not in controversy. Dkt. 29, at 5. The Court is mindful of subjecting a child to an extensive and invasive examination, while also recognizing that it will be very difficult for Defendants to present a meaningful defense (or for Plaintiffs to meaningfully support their claims) without some evidence as to the nature of D.C.'s disabilities, emotions, and mental health before the incidents, shortly after the incidents, and presently, about two and a half years after the incidents.

This is especially evident by the following sentence in Plaintiffs' Complaint: "Notwithstanding, as a result of D.C.'s disability, he was already predisposed to mental distress and anxiety, and the trauma which was [inflicted] significantly exacerbated those

---

[6] Dr. Gage is Defendants' requested professional. He has extensive experience in the areas of psychology that are pertinent in this case (Dkt. 21-4), and the Court finds he is a suitable choice for conducting the examination.

[7] The Court recognizes the expert discovery deadline in this case is currently set for March 31, 2025, which is less than the 60 days the Court is allowing for examination. The Court has intentionally allowed for a larger timeframe due to the need for Plaintiffs to travel from out-of-state for the examination and with the understanding that the examination could take place in two separate sessions (interviewing and testing). If the parties are unable to meet the current deadlines set forth in docket 27, the parties are encouraged to confer with one another to attempt to reach a stipulation to briefly extend the deadlines.

MEMORANDUM DECISION AND ORDER - 9

symptoms." Dkt. 1, at 19. Plaintiffs cannot allege an exacerbation of D.C.'s disabilities caused by Defendants' actions while simultaneously insisting it is not proper to evaluate his disabilities when trying to determine the extent of any harm he has endured. Thus, an examination that addresses his disabilities is crucial to all parties when it comes to establishing or defending against any "special damages, general damages, reputational damages," "severe emotional distress," "mental distress and anxiety," and needing to "completely dissociate himself from his place of education." Dkt. 1, at 118–19.

With that acknowledgment, the Court does not want to subject D.C. to a battery of tests unrelated to the disabilities he has been diagnosed with, or any tests that would not provide information as to new issues that have arisen because of the incidents in September 2022. As such, Dr. Gage's examination should be limited to those disorders to which D.C. has been formally diagnosed in the past, whether that be by Dr. Eisenbeiss in the October 2022 examination (Dkt. 25-1, at 14), or another medical professional at a separate time. Dr. Gage may also conduct testing related to trauma-induced disabilities, such as Post Traumatic Stress Disorder. As far as Plaintiffs' contention that Defendants are seeking "physical or mental examination of non-parties" (Dkt. 29, at 6), Dr. Gage will be permitted to seek input from third parties in accordance with his standard practices in conducting these tests. If teachers or family members are routinely questioned as part of the overall examination process, and such questions have the ultimate end of evaluating D.C. and not those third parties, such will be allowed. The above limits will allow for a fair trial while preserving D.C.'s right to privacy where possible.

### B. Motion to Seal (Dkt. 24)

The Motion for examination is non-dispositive, as it is only tangentially related to the merits of the case, it does not dispose of the case or any claim within, and it does not trigger an appeal. Therefore, the accompanying Motion to Seal (Dkt. 24) must only meet the good cause standard. The good cause standard has been met. Defendants are requesting to seal the report created by Dr. Eisenbeiss during the examination of D.C. that took place in October 2022, along with references to the details of that report in the Memorandum in Support of Defendants' Motion for F.R.C.P. 35 Examination of Plaintiff. Plaintiffs do not oppose the Motion.

The report contains extremely sensitive details about D.C.'s disabilities and family history. Defendants cite both the Ninth Circuit and the Family Educational Rights and Privacy Act in asserting that medical records, personal health information, and educational records are protected from public disclosure Dkt. 24-1, at 2–3. The Court agrees, and considering D.C. is also a minor, there is a great need here to protect this sensitive personal information that trumps any public interest in the information. As such, the Motion to Seal is GRANTED.

## V. CONCLUSION

Plaintiff D.C.'s physical and mental condition is in controversy, and there is good cause to order an examination under F.R.C.P. 35. The examination should be limited to those disabilities to which D.C. has been diagnosed or which are trauma related. There is also good cause to seal the report from D.C.'s previous examination.

# VI. ORDER

1. Defendants' Motion for F.R.C.P. 35 Examination (Dkt. 21) is **GRANTED**.

   a. Plaintiff D.C. will be subject to a mental examination by Dr. Jason Gage within sixty (60) days of the issuance of this order.

   b. The examination will take place at 3380 W. Americana Terrace, Ste. 320, Boise, ID 83706.

   c. The examination and all tests will be conducted in accordance with relevant medical standards as indicated by the medical provider, including, but not necessarily limited to the American Psychology Association.

   d. The examinee will be provided documents to be completed and brought to the evaluation. These documents can be filled out, if necessary, at the time of the mental examination.

   e. The report of the examination shall be in writing and detail the examiner's findings, including diagnoses and conclusions.

   f. The scope of the examination is limited to the following:

      i. Dr. Gage may only administer examinations related to D.C.'s previous diagnoses and any trauma related disorders, including medical and mental health history, and questions necessary and incidental to the examination.

      ii. Dr. Gage may only question third parties in accordance with his standard practices related to the above tests.

      iii. Dr. Gage may question Plaintiffs regarding the incidents alleged in the Complaint.

2. Defendants' Motion to Seal (Dkt. 24) is **GRANTED**. The relevant documents shall remain under seal.

DATED: February 25, 2025

David C. Nye  
Chief U.S. District Court Judge