UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH CROSSLEY and JESSICA CROSSLEY, individually and on behalf of D.C., their minor child,<br><br>Plaintiffs,<br><br>v.<br><br>WEST ADA SCHOOL DISTRICT #2, an Idaho school district; TODD ADAMS; CYNTHIA MCCARTNEY; CAROLYN GLOVER; and DOES I-X,<br><br>Defendants. | Case No. 1:24-cv-00106-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

**I. INTRODUCTION**

Before the Court is Defendants' Motion for Summary Judgment (Dkt. 36) and Plaintiffs' Motion to Permit Punitive Damages (Dkt. 37).

Defendants argue summary judgment is proper because several of Plaintiffs' claims are improperly pleaded, and the rest fail for lack of evidence. Dkt. 36-1. Plaintiffs argue their claims are properly pleaded and rest on sufficient evidence, *see generally* Dkt. 44, and they further seek an order authorizing them to pursue punitive damages at trial, Dkt. 37-1. The Court held oral arguments on November 18, 2025, and took the matters under advisement.[1] Dkt. 56.

---

[1] The Court also requested supplemental briefs regarding a relevant case it had located and the question of whether this case should be analyzed against the backdrop of the Fourth Amendment of the United States Constitution. Dkt. 56. The parties timely filed their briefs. Dkts. 58, 59.

MEMORANDUM DECISION AND ORDER - 1

Because the Court finds that some, but not all, of the issues in this case present genuine disputes of material fact, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. The Court further finds Plaintiffs' Motion to Permit Punitive Damages is premature, as the Court cannot determine whether to instruct the jury on punitive damages until after the close of evidence, so the Motion is DENIED WITHOUT PREJUDICE.

## II. BACKGROUND

Plaintiffs Joseph and Jessica Crossley allege Defendants, West Ada School District No. 2 and its agents, deprived their son, D.C., of his rights, discriminated against him, and committed several torts when they forcibly removed him from the classroom on multiple occasions.

D.C. is an autistic student who attended kindergarten at Star Elementary School. He was taught by Carolyn Glover and assisted by Carolyn McCartney, a special education paraprofessional. Star Elementary's principal is Todd Adams.

On two separate occasions in September 2022, D.C. was forcibly removed from the classroom by Ms. McCartney, allegedly assisted by Ms. Glover. On September 15, 2022, D.C. began screaming and crying and would not follow instructions. Ms. McCartney pulled D.C. by his wrists into the hallway. Plaintiffs allege Ms. Glover held D.C.'s legs while Ms. McCartney pulled him by the wrists. These allegations are based on statements D.C. later made to Ms. Crossley. Defendants deny Ms. Glover's involvement outright. The September 15 incident is captured on video, which shows Ms. McCartney pulling D.C. and

MEMORANDUM DECISION AND ORDER - 2

may show D.C. being propelled from behind, but does not clearly show the space behind D.C. where Plaintiffs allege Ms. Glover would have held him.

Five days later, D.C. was again inconsolable, and Ms. McCartney again removed D.C. from the classroom. This incident was also captured on video, but again the parties dispute what happened outside the camera's view. Ms. McCartney says she pushed the chair on which D.C. was seated into the hallway. Plaintiffs allege Ms. McCartney pulled him out by his body, citing the video which shows no chair.

The September 15 and September 20 incidents may not be the only occasions where D.C. was forcibly removed from the classroom. Mr. Adams told Ms. Crossley that he had identified two other such incidents (but did not offer specifics); Ms. McCartney stated D.C. was removed a handful of times; and Ms. Glover stated in her deposition that removals occurred at least weekly. Nonetheless, neither party offers specifics as to incidents other than those on September 15 and September 20.

Following the September 15 incident, Ms. McCartney informed Ms. Crossley that she had to drag D.C. out of the classroom by his shirt. The next day, Ms. Crossley contacted Mr. Adams regarding what she interpreted to be Ms. McCartney's admission of misconduct. Later that day, Mr. Adams informed Ms. Crossley that he had spoken to Ms. McCartney, that Ms. McCartney and D.C. had exaggerated their descriptions of the event, and that Ms. McCartney would be trained on the proper manner of speaking to parents. Ms. McCartney, in her deposition, denied that Mr. Adams ever spoke to her and further denied she received any training on parent-educator communication. Plaintiffs seek to infer from this discrepancy that Mr. Adams knowingly and voluntarily lied to Ms. Crossley.

MEMORANDUM DECISION AND ORDER - 3

Following the September 20 incident, the parties discussed D.C.'s individualized education program ("IEP") and his continued attendance at Star Elementary. Plaintiffs allege they reasonably feared for D.C.'s safety and thus were constructively denied return to Star Elementary. Defendants argue the Crossleys voluntarily withdrew D.C. from school.

Plaintiffs filed suit on February 23, 2024, seeking compensatory and punitive damages related to the two September 2022 incidents. Plaintiffs allege Defendants deprived D.C. of his rights without due process and denied D.C. reasonable accommodations in violation the ADA and § 504 of the Rehabilitation Act. Plaintiffs also allege Defendants broke Idaho law by committing civil child abuse and intentional infliction of emotional distress.

Defendants sought summary judgment on June 17, 2025. Dkt. 36. In their Motion, Defendants argue Plaintiffs' § 1983 claim improperly retreads their ADA and § 504 claims, and the remaining claims fail for lack of admissible evidence. *See generally* Dkt. 36-1. The same day, Plaintiffs sought an order authorizing them to pursue punitive damages at trial. Dkt. 37. Both parties responded and replied to their respective motions. Dkts. 43; 44; 49; 50.

On November 18, 2025, the Court held a hearing on both motions. In addition to hearing the parties' arguments, the Court raised its concern that neither party addressed whether Plaintiffs' § 1983 claim arose under the Fourteenth Amendment (as Plaintiffs' Complaint indicates) or the Fourth Amendment (which Ninth Circuit precedent seems to prefer). The Court, therefore, ordered supplemental briefing on the question of whether

MEMORANDUM DECISION AND ORDER - 4

Plaintiffs' Complaint properly states a claim for unconstitutionally excessive force under Ninth Circuit precedent. The parties supplied the requested briefing. Dkts. 58; 59.

The matter is now ripe for review.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation modified). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

The movant has the initial burden of showing through the pleadings, depositions, answers, admissions, and (potentially) affidavits that no genuine issues of material fact exist as to a challenged claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden if it can point to a legal defect in the nonmovant's theory, competent evidence contradicting the nonmovant's claims, or (if the nonmovant bears the burden of proof on the challenged issue) the nonmovant's inability to produce evidence supporting its claims in discovery. *See id.*, *see also Bosse v. I.D.O.C.*, 2021 WL 1820639, at *2 (D. Idaho May 5, 2021).

If the movant carries its initial burden, the burden shifts to the nonmovant to come forward with evidence tending to prove the challenged claim. *Id.* at 322–23. If the nonmovant does so, the burden shifts back to the movant to show that the nonmovant's

evidence does not create a genuine issue of material fact. To secure summary judgment, the movant must show that the nonmovant's evidence is insufficient to prove at least one essential element of its claim at trial. *Celotex*, 477 U.S. at 322–23.

## IV. DISCUSSION

### A. Section 1983 Claim

Defendants first seek summary judgment on Plaintiffs' § 1983 claim. Section 1983 does not itself create rights, but provides a cause of action to vindicate pre-existing rights. To prevail on a § 1983 claim, the plaintiff is required to show: (1) the action occurred "under color of state law" and (2) the action resulted in the "deprivation of a constitutional right or federal statutory right." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A state may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. However, "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act," *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

### 1. Constitutional Claims are not Barred by the ADA Remedial Scheme

Defendants first argue Plaintiffs' § 1983 claim is improper as a matter of law because the Ninth Circuit in *Vinson* (and this Court's interpretation of *Vinson* in *Snyder v. United States*, 2023 WL 5000736 (D. Idaho Aug. 4, 2023)) held that the same set of facts cannot amount to a violation of § 1983 *and* the ADA / the Rehabilitation Act. Dkt. 36-1, at 4. Plaintiffs counter that Defendants misread *Vinson*. Plaintiffs read *Vinson* as holding that a plaintiff cannot sue under § 1983 for violation of a federal statutory right if the statute

MEMORANDUM DECISION AND ORDER - 6

creating the right also created a statutory remedy. And while Plaintiffs believe the facts show a violation of federal disability rights, they believe they also show a simultaneous violation of distinct constitutional rights. Dkt. 44, at 2–3.

*Snyder* includes language supporting Defendants' reading. *Snyder*, 2023 WL 5000736 at *6 ("Asserting that the same facts state an ADA and a § 1983 claim is not permissible; Plaintiff's sole remedy for disability discrimination lies with the ADA") (citing *Vinson*, 288 F.3d, at 1156). But *Snyder*'s language is imprecise. *Vinson* held that the same set of *rights* could not form the basis for a § 1983 claim and ADA/Rehabilitation Act claims, not that the same facts could not support similar, yet distinct, causes of action. *Vinson*, 288 F.3d, at 1156. The Ninth Circuit reasoned that, because Congress enacted comprehensive remedial schemes to vindicate ADA and Rehabilitation Act rights, it foreclosed plaintiffs from using general remedial statutes like § 1983. *Id.*, at 1155–56. Where there is a right but not a remedy, § 1983 may be available. But where Congress in one act creates both a right and a remedy, litigants must use the act's remedy to vindicate the act's right.

*Snyder* seems to expand *Vinson* to hold that the same set of *facts* cannot form the basis for a § 1983 claim. *Snyder*, 2023 WL 5000736 at *6. Yet *Vinson*'s rationale does not support that extension. Congress has not made the ADA or Rehabilitation Act remedial schemes the exclusive remedy for anyone seeking ADA or Rehabilitation Act relief. Nor did *Snyder* squarely address whether *Vinson* should be extended, suggesting it meant to merely reiterate the *Vinson* rule. Because a literal reading of *Snyder* would expand *Vinson* beyond both its holding and its rationale, the Court declines to take *Snyder* literally.

MEMORANDUM DECISION AND ORDER - 7

Because Plaintiffs seek to use § 1983 to vindicate only their constitutional rights, their § 1983 claims is not improper under *Vinson*.

### 2. Substantive Due Process or Unreasonable Seizures?

In supplemental briefing, Defendants also object to Plaintiffs' § 1983 claim because it is brought under the Fourteenth Amendment's substantive due process protections while Ninth Circuit precedent requires courts to analyze a teacher's use of force against a student under the Fourth Amendment reasonableness standard. Dkt. 58, at 5. Plaintiffs concede their excessive force claim should be analyzed under the Fourth Amendment, but argue they have a valid Fourth Amendment claim (without discussing whether that claim was properly raised in their Complaint).

A teacher's use of excessive force should be analyzed under the Fourth Amendment. *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1180 (9th Cir. 2007); *see also Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 908–09 (9th Cir. 2003) ("We hold that Doe's claim is appropriately brought under the Fourth Amendment, not the Due Process Clause."); *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 948–49 (9th Cir. 2018).[2] The Court, therefore, GRANTS summary judgment against Plaintiffs on their substantive due process claim.

### 3. Implied Motion to Amend

Plaintiffs ask the Court to analyze their § 1983 claim using the Fourth Amendment

---

[2] While the *Doe ex rel. Doe* court suggested that there may be instances of excessive force which do not amount to a search or seizure, and that in such circumstances the Due Process clause would apply, 334 F.3d at 909, dragging a student out of a location against the student's will is a paradigmatic seizure of the person.

MEMORANDUM DECISION AND ORDER - 8

as their substantive right, even though their Complaint does not explicitly state a Fourth Amendment claim. *See generally* Dkt. 59. Plaintiffs cite *Preschooler II*'s discussion of both the Fourth and Fourteenth Amendments as precedent for reading a Fourth Amendment claim into the Complaint. Dkt. 57, at 31. But *Preschooler II* mentioned both standards because the complaint in that case alleged both Fourth and Fourteenth Amendment violations. 479 F.3d at 1179. The Complaint in this case only states a Fourteenth Amendment claim.

Moreover, the unreasonable seizure test and the "shocks the conscience" test are different enough that the Ninth Circuit has found it necessary to analyze schoolteacher excessive force claims separately under each standard. *See, e.g.*, *P.B. v. Koch*, 96 F.3d 1298, 1303 n.4 (9th Cir. 1996). In analyzing the facts under the Fourth Amendment separately from the Fourteenth Amendment, the *Koch* court suggested the Fourth Amendment test focuses on objective reasonability in the school setting, while the Fourteenth Amendment test focuses heavily on the subjective intent of the state actor. *Id.* Because the tests are sufficiently different as to require distinct analyses, the Court cannot simply read a Fourth Amendment claim into the Complaint.

Yet the Court cannot simply disregard Plaintiffs' Fourth Amendment claim, either. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 11154 (9th Cir. 2014). Though summary judgment is not a chance to flesh out inadequate pleadings, *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 745 (9th Cir. 2025), the pleadings do not control the issues before the Court on summary judgment. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). Defendants' blanket objection to Plaintiffs recovering on an unpleaded theory of liability

MEMORANDUM DECISION AND ORDER - 9

(Dkt. 58, at 3) must be overruled as well. *See Desertrain*, 754 F.3d at 1154 (it is abuse of discretion to ignore a legal issue at summary judgment simply because it was not raised in the pleadings).

When parties raise unpleaded legal theories at summary judgment, courts in the Ninth Circuit construe the new issue as an implied motion to amend. *Id.*; *accord Johnson*, 574 U.S. at 12 (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1219) (vacating with instructions to permit amendment); 5 Wright & Miller, Fed. Prac. & Proc. § 1219 (changes in legal theory from those stated in the pleading at summary judgment constrained by Rules 15 and 16); *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) (the district court has discretion to determine whether a late change in the thrust of the case is too prejudicial to permit amendment). Thus, the Court must determine whether Plaintiffs' change in legal theory is appropriate under the applicable rules governing amendment.

If the Court has entered a scheduling order, and the time for amending the pleadings has passed, the Court must first utilize Rule 16 to determine whether good cause exists to grant relief from the scheduling order. *Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *23  (S.D. Cal. Apr. 6, 2022) (citing *Neidermeyer v. Caldwell*, 718 F. App'x 485 (9th Cir. 2017)). If good cause exists, the Court must then conduct an ordinary Rule 15(a) analysis. If the new issue satisfies both Rules, the Court should consider the issue and grant leave to amend; otherwise, leave to amend should be denied.

The scheduling order's deadline for filing amended pleadings in this case passed on July 16, 2024, whereas the Fourth Amendment issue was raised for the first time on November 18, 2025; Rule 16(b), therefore, applies. "Rule 16(b)'s good cause standard

MEMORANDUM DECISION AND ORDER - 10

primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "[T]he focus of the good cause inquiry is whether the moving party could not reasonably meet the established timeline in a scheduling order despite the party's diligence." *Sierra Club v. City of Boise*, 2024 WL 5054815, at *2 (D. Idaho Dec. 9, 2024) (citation modified). "[C]arelessness is not compatible with a finding of diligence . . . if [the moving] party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

Plaintiffs cannot show good cause for failing to structure their complaint around the proper legal standard when that standard was announced over twenty years ago. Nothing prohibited Plaintiffs from properly stating a Fourth Amendment claim at any time within the time for amending the pleadings set by the scheduling order. Yet the Fourth Amendment issue was not raised until the Court did so sua sponte at the summary judgment hearing. Plaintiffs were not diligent in complying with the scheduling order's provisions regarding the time to amend; the implied motion to amend is, therefore, denied. *Id.*; *accord. B.H. v. Clark Cnty. Sch. Dist.*, 2025 WL 3215894, at *3–4 (D. Nev. Nov. 17, 2025). Plaintiffs will not be permitted to proceed on either a substantive due process or unreasonable seizure theory.

### 4. Procedural Due Process

The Plaintiffs also raise a procedural due process claim through § 1983. Dkt. 44, at 5–6. "There are three elements of a procedural due process claim under 42 U.S.C. § 1983: (1) a liberty or property interest protected by the Constitution, (2) a deprivation of the interest by the government, and (3) a lack of process." *K. J. by & through Johnson v.*

*Jackson*, 127 F.4th 1239, 1247 (9th Cir. 2025) (citation modified). If state constitutions grant a right to education, the first element is satisfied. *Id.* The Idaho Constitution grants Idahoans a right to primary education, Idaho const., art. IX, § 1, so Plaintiffs can satisfy the first element of their procedural due process claim. *Jackson*, 127 F.4th at 1247. To succeed on summary judgment, then, Defendants must show that there is no genuine dispute of material fact as to the second or third element.

Ms. Glover, for her part, argues she could not have deprived D.C. of his right to education because she did not physically expel D.C. from the classroom. Plaintiffs contest D.C. has repeatedly asserted Ms. Glover was involved in the September 15 incident to Ms. Crossley and Dr. Gage, and security video from that date appears to show D.C. propelled out of the classroom with force from behind. The Court has independently viewed the video evidence and concludes that, based on the video, a reasonable jury could find that D.C. was propelled from the classroom from behind, and could further reasonably conclude that Ms. Glover, as the only other adult in the room, was the one who propelled him. Thus, there is a genuine issue regarding Ms. Glover's involvement in the September 15 incident.

Defendants also argue there is no evidence Mr. Adams and West Ada No. 2 personally participated in the denial of D.C.'s right to education. Dkt. 36-1, at 6–7. Take Mr. Adams first. "Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Preschooler II*, 479 F.3d at 1182 (citation modified). Thus, Mr. Adams may be liable only "for his own culpable action or inaction in the training, supervision, or control

MEMORANDUM DECISION AND ORDER - 12

of his subordinates . . . ." *Id.* at 1183. As Mr. Adams did not personally participate in either the September 15 or September 20 incident, Plaintiffs have the burden of coming forward with evidence of Mr. Adams's participation.

Plaintiffs believe Mr. Adams is liable "because essentially he, as a supervisor, deliberately covered for his other employees by creating a ruse." Dkt. 57, at 32–33. Plaintiffs point to Mr. Adams's email to Ms. Crossley (stating he would speak to Ms. McCartney), and Ms. McCartney's own testimony (denying Mr. Adams spoke with her after the September 15 incident). Plaintiffs argue the jury could infer from the discrepancy that Mr. Adams intentionally misled Ms. Crossley to believe that he was handling the situation, when in fact he did not act. Dkt. 44, at 11, *see also* Dkt. 57, at 33. Reasonable juries may disagree as to whether Plaintiffs' evidence in this respect is sufficient to show Mr. Adams intentionally failed to act. Summary judgment will, therefore, be denied as to Mr. Adams' involvement.

As for the school district, West Ada School District No. 2 may be liable only if it satisfied the standard laid out in *Monell v. Dep't of Soc. Servs. See C.B. v. Moreno Valley Unif. Sch. Dist.*, 544 F. Supp. 3d 973, 990 (9th Cir. 2021). Where liability is predicated on an informal policy, the plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure" of the governmental entity. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* The policy must be the moving force behind the violation. *C.B.*, 544 F.

MEMORANDUM DECISION AND ORDER - 13

Supp. 3d at 990–91.

Here, Plaintiffs allege the District held an informal policy of physically ejecting disruptive, but not dangerous, students from the classroom Dkt. 44, at 12. As evidence, they point to Ms. McCartney's testimony that removing D.C. from the classroom when he became inconsolable was standard practice, Dkt. 44, at 11–12, corroborating notes taken by the District's special education director Ramona Lee, and Mr. Adams's statement to Ms. Crossley that he had identified two other instances where D.C. was physically removed from the classroom. Dkt. 44, at 12. Defendants' opening brief asserts the District did not have a policy of abuse, citing a sworn declaration. Dkt. 36-1, at 6. But they do not offer any reply argument that Plaintiffs' evidence fails to raise a genuine issue of material fact; they, therefore, fail to carry their burden and summary judgment in the District's favor will be denied.

Finally, Defendants argue that summary judgment is appropriate on the second element of their due process claim (deprivation of the protected interest) because the evidence shows the Crossleys voluntarily withdrew D.C. from the school district. Dkt. 36-1, at 6. Plaintiffs are prepared to offer testimony that, while they participated in remediation with the school, they ultimately did not feel it would be safe to send D.C. there and withdrew him under circumstances that should be interpreted as constructive expulsion. The evidence does not conclusively demonstrate that the Crossleys voluntarily withdrew D.C. from Star Elementary, so the Defendants are not entitled to summary judgment on that argument.

Because the Court finds that Defendants have failed to carry their burden of showing

MEMORANDUM DECISION AND ORDER - 14

there are no genuine issues of material fact on Plaintiffs' § 1983 procedural due process claim, their Motion for Summary Judgment is DENIED IN PART accordingly.

### B.  ADA / § 504 Claims

Defendants argue Plaintiffs' ADA and § 504 claims are barred on the merits, and further suggest Plaintiffs' did not administratively exhaust their § 504 claims as required. Because of their similar subject matter, ADA and Section 504 claims may be addressed simultaneously. A.*G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013).

*1. Failure to Exhaust*

Defendants argue that Plaintiffs' § 504 claims are improper because they did not seek a Due Process Hearing as required by the Individuals with Disabilities Education Act ("IDEA") and thus failed to exhaust their administrative remedies. Dkt. 36-1, at 10–12. Defendants' argument is, however, foreclosed by the Supreme Court's recent decision in *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023). In *Luna Perez*, the Court found that IDEA's exhaustion requirement does not impact suits for strictly compensatory monetary relief. *Id.* at 147–48. Because Plaintiffs' Complaint seeks only compensatory relief, they were not required to exhaust their IDEA remedies.

*2. Merits*

To succeed on both ADA and § 504 claims, Plaintiffs must show that: (1) D.C. is a qualified individual with a disability; (2) he was denied a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services; and (3) the

MEMORANDUM DECISION AND ORDER - 15

program providing the benefit receives federal financial assistance (for the Rehabilitation Act) or is a public entity (for the ADA). *See Csutoras v. Paradise High School*, 12 F. 4th 960, 968–69 (9th Cir. 2021). The reasonable accommodation element can be satisfied by showing the school wrongly denied an accommodation request or failed to comply with a binding regulation. *Id.*, at 969. Plaintiffs must also show that D.C.'s disability was a motivating factor (ADA) or the sole motivating factor (§ 504) for the alleged discrimination. Dkt. 36-1, at 8.

The parties agree that D.C. is a qualified individual and that Star Elementary receives federal financial assistance and is a public entity. Dkt. 36-1, at 9. Moreover, Defendants do not argue they are entitled to summary judgment based on the mens rea element of ADA and § 504 claims. *See* Dkt. 36-1, at 9–12. Thus, the sole dispute at present is whether Defendants denied D.C. a reasonable accommodation.

To succeed, Plaintiffs "must show that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the program or activity and that the accommodation would have enabled [the plaintiff] to meet the 'program's essential eligibility requirements.'" *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016) (citation modified).

By way of Rehabilitation Act regulations, both § 504 and Title II of the ADA (which incorporate those regulations by reference) require schools to provide a free appropriate public education. Dkt. 44, at 16 (citing 42 U.S.C. § 12201(a); 34 C.F.R. § 104.12). Programs and services, when taken as a whole, must be readily accessible to use and usable

by the disabled individual. Dkt. 36-1, at 9. *See also Rodriguez v. Cnty. of San Diego*, 2016 WL 4515860, at \*3 (S.D. Cal. Feb. 9, 2016)

Defendants argue that, when viewed in their entirety, their programs were sufficient. They cite D.C.'s report card, Dkt. 36-1, at 9–10, his IEPs, *id.* at 10, and his progress report for 2022, *id.* These documents together show that the District engaged in the formal requirements for accommodating D.C. and that D.C. was purportedly improving notwithstanding the September incidents.

However, Plaintiffs argue that D.C. could not have been reasonably accommodated because Ms. McCartney stated she did not know D.C. was disabled, D.C.'s physical removal was not consistent with his IEP, and Ms. McCartney and Ms. Glover did not take reasonable accommodative steps which could have mitigated his meltdowns in the first place (e.g., by reminding D.C. of time, cleanly transitioning subjects, and explaining the why behind their instructions). Dkt. 44, at 16–17. But these are all factual disputes that cannot be resolved at this stage of the case. Because a reasonable jury could find that physically removing D.C. was improper under the circumstances, that physically removing him prevented D.C. from readily accessing and using the school's educational services when viewed in their entirety, and/or that Ms. McCartney and Ms. Glover could have taken reasonable steps to accommodate him, Plaintiffs have raised a genuine issue of material fact as to the reasonable accommodation element of ADA and § 504 claims.

In sum, Defendants' Motion for Summary Judgment is DENIED on this claim.

**C. Idaho Tort Claims**

Lastly, Defendants argue summary judgment is appropriate on Plaintiffs' state law

claims because they cannot establish a prima facie case for either their civil child abuse claim or their intentional infliction of emotional distress claim. Dkt. 36-1, at 13–16. Plaintiffs disagree, alleging there are significant disputed facts in the record precluding summary judgment on these claims.

### 1. Civil Child Abuse

Defendants argue they are entitled to summary judgment on Plaintiffs' civil child abuse claim because they did not "harm" D.C. within the meaning of Idaho Code §§ 18-1501 and 6-1701. Dkt. 36-1, at 13.

Idaho Code § 6-1701(d) provides a cause of action in tort for any defendant who injures a child as that term is defined at Idaho Code § 18-1501. Section 18-1501, in turn, defines injuring a child to include, *inter alia*, willfully inflicting unjustifiable physical pain or mental suffering or willfully causing or permitting such child to be placed in such situation that its person or health is endangered. "Willfully" is defined as acting or failing to act where a reasonable person would know the act or failure to act is likely to result in injury or harm or is likely to endanger the person, health, safety or well-being of the child. Idaho Code § 18-1501(5). While vicarious liability is not permitted, one who has custody of a child and fails to act while knowing that the child's health, safety, or welfare are endangered is personally liable for that failure to act. *Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1127 (Idaho 2007).

Plaintiffs argue Defendants violated Idaho Code § 6-1701(d) and § 18-1501 by subjecting D.C. to repeated physical assaults from grown adults; by deliberately covering up the danger from the view of D.C.'s parents; and by permitting D.C. to remain in an

MEMORANDUM DECISION AND ORDER - 18

environment where further assaults were reasonably likely to occur.

Presuming that the jury believes all of Plaintiffs' witnesses and disbelieves Defendants' witnesses, and presuming they construe all inferences in Plaintiffs' favor, the current record does not preclude a finding of civil child abuse. Plaintiffs are prepared to offer evidence that Ms. McCartney and Ms. Glover are liable for their direct abuse of D.C., and that Mr. Adams is liable for his failure to prevent Ms. McCartney and Ms. Glover from continuing to physically remove D.C. from the classroom. Such evidence is sufficient to create a genuine issue of material fact as to civil child abuse under Idaho law and summary judgment will not be granted.

*2. IIED*

Finally, Defendants argue they are entitled to summary judgment on Plaintiffs' intentional infliction of emotional distress claim because the September 15 and September 20 incidents did not result in severe emotional distress. Dkt. 36-1, at 14. "To recover for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress, and (4) the emotional distress was severe." *Trappett v. Clearwater Cnty.*, 2023 WL 6198664, at *4 (D. Idaho Sept. 22, 2023).

As evidence of severe emotional distress, Plaintiffs point to Ms. Crossley's deposition, where she testified that D.C. was severely distressed, Dkt. 44, at 21 (citing Crossley Depo, March 21, 2025, at 61:17-22), and Defendants' own expert report which opined that D.C. was traumatized due to his expulsion from the classroom. Dkt. 36-1, at

MEMORANDUM DECISION AND ORDER - 19

15. While the jury is free to disbelieve Ms. Crossley, and Defendants' expert characterized D.C.'s trauma as "transient," a jury may reasonably conclude that this evidence, in combination with the video evidence and their practical experience with children, shows extreme emotional distress. Defendants are not, therefore, entitled to summary judgment on Plaintiffs' IIED claim.

### D. Motion to Permit Punitive Damages

Finally, Plaintiffs move the Court for an order permitting them to present the issue of punitive damages to the jury. The Court cannot determine as a matter of law whether it is appropriate to instruct the jury on punitive damages until the close of evidence. Plaintiffs' Motion is, therefore, DENIED WITHOUT PREJUDICE. The Court will determine whether to instruct the jury on punitive damages after the close of evidence.

## V. CONCLUSION

Defendants are entitled to summary judgment on Plaintiffs' substantive Due Process claim because a schoolteacher's excessive force sounds in the Fourth Amendment rather than the Fourteenth Amendment. Furthermore, because the time for amendment has passed and Plaintiffs cannot show good cause for failing to properly plead the proper claim within the time allotted, the Court must deny leave to amend. However, because Defendants did not carry their burden of showing that there are no genuine disputes of material fact as to Plaintiffs' remaining claims, the Motion for Summary Judgment must be denied in those respects.

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 36) is GRANTED IN PART and DENIED IN PART as outlined above. Summary judgment is granted as to Plaintiffs' substantive due process claim but denied in all other respects.

2. Plaintiffs' Motion to Permit Punitive Damages (Dkt. 37) is DENIED WITHOUT PREJUDICE.

3. The Court will schedule a telephonic status conference in the near future for the purposes of selecting a trial date.

DATED: March 17, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 21